OPINION
Defendant-appellant, Narendra K. Gupta, M.D., appeals from the judgment of the Allen County Court of Common Pleas entered on a jury verdict in which plaintiff-appellee, Marjorie Jacobs, was awarded $100,000.
On October 6, 1997, appellee filed a complaint alleging a claim for intentional infliction of emotional distress against appellant. This claim arose from his practice of conduct at her place of employment between approximately 1994 and 1995. The case proceeded to a jury trial and the jury rendered a verdict in favor of appellee. Upon appeal, appellant raises four assignments of error.
For his first assignment of error, appellant asserts:
 The court erred by overruling appellant's motion for judgment notwithstanding the verdict after the jury interrogatories were inconsistent with the jury verdict.
 In this case, the jury returned a general verdict in favor of appellee together with answers to five interrogatories. Two of the interrogatories to the jury stated as follows:
 1. Do you find by the greater weight of the evidence that Narendra K. Gupta, M.D. intentionally or recklessly acted in an extreme and outrageous manner?
 2. If the answer to interrogatory no. 1 is "yes," state in what respect Narendra K. Gupta, M.D. intentionally or recklessly acted in an extreme and outrageous manner.
 The jury's answer to the first interrogatory was "yes." In its answer to the second interrogatory, the jury indicated that appellant had caused physical and emotional damage to appellee, and that "[e]ven though Gupta appeared not to have any intentions of causing Marjorie Jacobs harm, his actions both professionally and personally are intolerable and unacceptable." By the assignment of error, appellant contends that the jury's answer to the second interrogatory was both inconsistent and irreconcilable with the general verdict in favor of appellee. For this reason, appellant contends that the trial court erred in not granting his motion for judgment notwithstanding the verdict.
Civ.R. 49(B) governs the use of special interrogatories and provides, in pertinent part, as follows:
 When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.
 However, the Ohio Supreme Court has held that a verdict should not be overturned unless the interrogatory answers are both inconsistent and irreconcilable with the general verdict. Tasin v. SIFCO Industries, Inc. (1990), 50 Ohio St.3d 102, 105; Otte v. Dayton Power Light Co. (1988), 37 Ohio St.3d 33, 41.
In the instant case, the trial court held that the jury's answer to interrogatory number two was not inconsistent with the general verdict and overruled the motion for a judgment notwithstanding the verdict. The second interrogatory that the jury answered consisted of a question on the issue of acting intentionally or recklessly. Given the wording of this interrogatory, the fact that the jury's answer reflected that appellant did not act intentionally does not necessarily make the second interrogatory irreconcilable with the first jury interrogatory. Rather, as reflected by its answer, it could have been construed to mean that the jury concluded that appellant's conduct was reckless. It is the duty of the trial court to reconcile, if possible, interrogatory answers with the general verdict. See Otte, supra. Given this principle, the wording of interrogatory number two and the jury's answer thereto, we must conclude that appellant has failed to establish that the answers to the interrogatories and the verdict were irreconcilable. Consequently, the trial court did not err in denying appellant's motion for judgment notwithstanding the verdict. Accordingly, we overrule appellant's first assignment of error.
For his second assignment of error, appellant asserts:
 The court erred by admitting testimony and evidence regarding the appellant's "other acts" in contravention of the Ohio Rules of Evidence.
 Appellant contends that the trial court erred in admitting evidence of various "other acts" in violation of Evid.R. 404(B). Specifically, appellant argues that testimony of nurse Dena Klinger at Lima Memorial Hospital had no relevance to the jury's determination of whether the appellant intentionally inflicted emotional distress on appellee and its admission unfairly prejudiced appellant. The appellee was permitted to introduce testimony of nurse Klinger about dancing with appellant at a Christmas party at his house. Klinger's testimony also disclosed that from approximately December 1995 through January 1996 while working at Lima Memorial Hospital, appellant had asked her out numerous times and she would tell him to stop asking. She further testified that on one occasion appellant pulled her close so that they were touching, rubbed her thigh, and then tried to pull her into his office.
Initially, we note that Evid.R. 404 is applicable in civil cases, as well as criminal cases. Weissenberger's Ohio Evidence, Treatise (2000) 102, Section 404.4; see, also, State v. Mason
(1998), 82 Ohio St.3d 144, 160 (noting that Evid.R. 404 applies to all character evidence, not just to those persons accused of crimes). To the extent this court may have stated otherwise inLeader Natl. Ins. Co. v. McCurdy (Nov. 16, 1993), Marion App. No. 9-93-31, unreported, 1993 WL 484207, that statement is overruled. Evid.R. 404(A) provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion * * *." However, Evid.R. 404(B) permits using other-acts evidence for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
"Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evidence of other acts is relevant, and therefore admissible, if it tends to prove one of the enumerated purposes in Evid.R. 404(B), such as motive or intent. However, even if the other acts testimony is admissible under Evid.R. 404(B), the trial court must exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A).
The "other acts" testimony at issue which occurred at the hospital was admissible to prove that appellant intended to engage in conduct of a sexual nature with nurse Klinger and, therefore, it was relevant to the issue of appellant's intent to make sexual advances or engage in other sexually charged conduct with appellee. Here, the alleged acts occurred in a similar setting and were reasonably close in time to be probative. In addition, there were similarities in the nature of the described acts. Therefore, the "other acts" testimony was relevant to prove intentional conduct of appellant, which goes to an element of the action for intentional infliction of emotional distress. In sum, we conclude that this evidence was both relevant to the instant case and admissible pursuant to Evid.R. 404(B). Moreover, we find that the probative value of this evidence was not outweighed by danger of unfair prejudice, confusion of issues, or misleading of the jury.
However, nurse Klinger's testimony as to an entirely different setting was not relevant to the claim for relief as alleged and was inadmissible. Even so, any error in admitting the other act evidence was harmless in the instant case. See Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 166 (holding that error in the admission of other act testimony is harmless when there is no reasonable possibility that such testimony contributed to the accused's conviction). Moreover, at trial, appellant disputed Klinger's testimony with the testimony of defense witness, David Corbin.
Finally, appellant argues that the trial court erred by failing to instruct the jury to only consider "other acts" testimony according to the permitted uses in Evid.R. 404(B). However, at trial, appellant did not object to the jury instructions on this basis. Thus, the issue has been waived.
Based upon the foregoing, we hold that the trial court did not err by denying the appellant's motion for a mistrial. Appellant's second assignment of error is therefore overruled.
For his third assignment of error, appellant asserts:
 The trial court erred by denying the appellant's motion for a directed verdict after the appellee failed to present competent evidence of causation.
 Appellant contends that his motion for a directed verdict should have been granted on the issue of causation of appellee's physical injury. In support, appellant argues that no competent medical testimony was presented to show any causal relationship between his alleged conduct and her claimed physical injury referred to as fibromyalgia.
When deciding whether to grant the motion for a directed verdict, the question for the trial court to decide was whether reasonable minds could differ on the issue of proximate cause. See Civ.R. 50(A). "Proximate causation" has been described by the Ohio Supreme Court as some "reasonable connection" between the defendant's act or omission and the damage the plaintiff has suffered. R.H. Macy Co. v. Otis Elevator Co. (1990), 51 Ohio St.3d 108,110. It is well established that an injury may have more than one proximate cause. Murphy v. Carrollton Mfg. Co.
(1991), 61 Ohio St.3d 585, 587. Hence, when two factors combine to produce damage or illness, each is a proximate cause. Id. at 588.
Dr. Kurt Kuhlman, whose specialty is physical medicine and rehabilitation, testified that based upon the history provided by appellee and the physical examination conducted, appellee suffered from fibromyalgia. Dr. Kuhlman described the condition as "a disorder of achy muscles." (Tr. 77.) Dr. Kuhlman opined that the combination of lifting patients at work, the cervical disk disease and the "sexual assault" caused the exacerbation to appellee's fibromyalgia. In view of the above testimony and the stated case law concerning proximate cause, we conclude that appellee presented some medical evidence on the causal connection between the events involving appellant and the exacerbation to appellee's condition upon which reasonable minds could reach different conclusions. We therefore find that the trial court did not err in denying appellant's motion for a directed verdict based on the issue of causation of appellee's physical injury, and the appellant's third assignment of error is accordingly overruled.
For his fourth assignment of error, appellant asserts:
 The jury verdict was manifestly against the weight of the evidence.
 Appellant contends that there was no evidence presented that his conduct rose to the level of "extreme or outrageous conduct" which would satisfy an element of appellee's claim of intentional infliction of emotional distress.
It is well-established that when some competent, credible evidence going to all the essential elements of the case exists to support the judgment rendered by the trier of fact, that judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. Intentional infliction of emotional distress occurs where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another * * *." Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 374, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1).
Appellee's testimony at trial was that she was employed as the clinical shift supervisor in the coronary intensive care unit of St. Rita's Medical Center since February 1991. Appellee testified that appellant's sexually offensive conduct began in early 1994. She testified that appellant would place his arm around her and pull her "real tight," rub his hand against her inner thigh, and rub her rear end while in the unit. Appellee also testified that appellant tried to kiss her on the lips a couple of times when they were in the supply room and that he asked her out numerous times. In addition, appellee's testimony relates two specific incidents of the alleged sexual misconduct committed by appellant. The first of these incidents occurred in October 1994 when they were in a patient's room. Appellant said to her "Why won't you go out with me?," and "Why can't we have a relationship?" (TR 141.) The appellee testified that appellant "ran his hands across [her] breasts." (TR 142.) The second incident again occurred in a patient's room in December 1994. Appellee testified that after she had knelt down to check the patient's catheter, appellant reached around her, held her arms down and then pulled her over to the corner of the room where he tried to kiss her. She tried to pull away, but he continued holding her arms with his one arm and "the other one he had all over [her]." (TR 144-145.) Appellee also indicated that appellant's actions caused her and the other nurses to take precautions to prevent a one-on-one situation.
In this regard, two other nurses who worked in the coronary care unit testified about their concerted efforts to isolate appellee from appellant. Although they did not see any actual physical contact, appellee appeared "rattled and fearful" to the one nurse after she came from the patient's room with appellant one evening in December and the other nurse remembered seeing appellee was shaken up later that evening. Both nurses also noticed that appellant would pay more attention to appellee than any other nurses. Additionally, appellee presented the testimony of nurse Klinger.
The jury found that appellant's conduct toward appellee was extreme and outrageous. Our review of the evidence presented at trial persuades us that the evidence of his conduct does rise to the level necessary to support the jury's verdict against appellant on the intentional infliction of emotional distress claim. The present case involved on-going instances of questionable conduct and the other nurse's efforts to protect appellee. In conclusion, we find that the record contains competent credible evidence to support the jury's verdict and, therefore, its verdict in this case was not against the manifest weight of the evidence. See C.E. Morris, supra.
Accordingly, appellant's fourth assignment of error is not persuasive and is overruled. The jury verdict is affirmed.
Judgment affirmed.
 ______________________________ SHAW, PRESIDING JUDGE
 BRYANT and WALTERS, JJ., concur.